# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH J. BORN and DELYSE R. BORN,<br><br>Defendants. | Case No. 4:14-cv-00008-RRB<br><br>**<u>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AT DOCKET 12</u>** |

Before the Court at **Docket 12** is the Government's Motion for Summary Judgment. Defendants Kenneth and DeLyse Born oppose the motion at Docket 14. Additionally, the Government has also filed a Motion to Exclude Evidence at **Docket 18**, seeking to exclude Defendant's settlement offer from the Court's consideration of the Motion for Summary Judgment. Defendants also oppose, at Docket 22, the Government's Motion to Exclude. For the reasons set forth below, the Court **GRANTS** the Government's Motion to Exclude Evidence and Motion for Summary Judgment.

# BACKGROUND

### A. Underlying Tax Issue

Defendant Kenneth J. Born was the President, Director, and/or officer of Homestead, Inc. d/b/a Homestead Builders, Inc. (hereafter "Homestead") during the tax periods ending December 31, 1998; March 31, 1999; June 30, 1999; September 30, 1999; December 31, 1999; March 31, 2000; June 30, 2000; and September 30, 2000 (hereafter "the Tax Periods"). In this capacity, Mr. Born had the authority to cause Homestead to make payments to its creditors, signed all of its checks, and was responsible for paying its federal employment taxes (IRS Form 941).

Mr. Born became aware that Homestead had failed to pay unpaid and outstanding federal employment taxes during the Tax Periods subsequent to their due dates. However, he directed or otherwise caused Homestead to make payments to parties other than the United States at various times while aware that federal employment taxes were due and owing to the United States.

On April 9, 2001, a delegate of the Secretary of the Treasury made an assessment of liability against Mr. Born in the amount of $270,788.91. The assessment was the result of Mr. Born's willful failure to collect, truthfully account for, and pay over the withheld federal income and FICA taxes of employees of Homestead for the Tax Periods. On August 25, 2008, the Government and Mr. Born entered into an Installment Agreement. Under this agreement Mr. Born agreed to pay the Government $250 a month and Mr. Born continued to make those payments until November 13, 2012.

The Government contacted Mr. Born around September 9, 2012, in order to conduct a required biannual review. Based upon that review, the Government informed Mr. Born he could

afford to increase his installment payment to $2,882 per month. Mr. Born disputed his ability to afford such payments and only made payments of $643 per month. These payments continued until the Government filed suit in February 2014, at which time Mr. Born stopped making any payments.

The Government has alleged that Mr. Born has neglected, refused, or otherwise failed to make adequate payment of the assessed amount to the United States. As of November 30, 2015, there remained due and owing on the 2001 assessment the sum of $508,293.86 plus accrued statutory interest and addition, less any payments or credits.

**B. Subject Real Property**

The parcel of real property sought to be foreclosed in this action consists of Lot 1 and Lot 3 located at 1235 Lakloey Drive, North Pole, Alaska 99705 (the "Subject Real Property"). The 2015 Fairbanks North Star Borough tax valuation of Lot 1 was $275,055 and of Lot 3 was $179,959. On September 16, 2013, Mr. Born purported to transfer his interest in the Subject Real Property by quitclaim deed to his wife, Defendant DeLyse R. Born, for "estate planning" purposes. Mrs. Born subsequently transferred her interest in the Subject Real Property by quitclaim deed back to both Mr. Born and herself on October 2, 2013. Mr. and Mrs. Born jointly hold title to the Subject Real Property as husband and wife tenants by the entirety. Defendants continue to maintain possession and control over the Subject Real Property, where they reside presently.

On or about February 25, 2014, a Notice of Federal Tax Lien was recorded against Defendant Kenneth J. Born by a delegate of the Secretary of the Treasury in the Recording District of Fairbanks, Fairbanks, Alaska, for the September 30, 2000, tax period.

## STANDARD OF REVIEW

Summary judgment avoids unnecessary trials when there is no dispute as to the facts in the matter before the court.[1] The evidence of the nonmoving party is to be believed and all reasonable inferences are drawn in his favor.[2] Summary judgment is appropriate where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[3] The opposing party must produce sufficient evidence to demonstrate that a triable issue of fact exists.[4] However, once the moving party has met the initial responsibility, the opposing party cannot then meet its burden to show genuine disputed facts simply by offering conclusory statements unsupported by factual data.[5]

Additionally, the United States of America is entitled to a decree of sale to enforce its tax liens where a claim or interest of the United States has been established.[6] The Court may set the terms and conditions of a sale of real property that is sold under any decree or order of the Court.[7] Moreover, the Court has broad discretion in setting the terms and conditions of a sale under 28 U.S.C. § 2001.[8]

---

[1] *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric*., 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted).

[2] *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[3] *Id*. (quoting Fed. R. Civ. P. 56(a)).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 50 (1986).

[5] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[6] 28 U.S.C. § 7403(c).

[7] 28 U.S.C. § 2001(a).

[8] *United States v. Branch Coal Corp*., 390 F.2d 7, 10 (3d Cir. 1968); *United States v. Heasley*, 283 F.2d 422 (8th Cir. 1960).

# DISCUSSION

## A. Motion to Exclude

The United States has moved at to exclude evidence of Mrs. Born's offer to purchase Mr. Born's interests in the Subject Real Property as it violates Federal Rule of Evidence 403 and 408. The Court agrees that not only may the inclusion of Mrs. Born's twice-rejected settlement offer confuse the issues, but it is not relevant to the issues before the Court. Moreover, the settlement very clearly offers valuable consideration in an attempt to compromise the Government's foreclosure claim, which is explicitly precluded by Rule 408. The Government's motion to exclude Defendants' offer of settlement is granted.

## B. Defendant Kenneth J. Born's Indebtedness for Outstanding Section 6672 Assessments

The Government has asserted that the undisputed facts in this matter demonstrate that Defendant Kenneth J. Born is indebted to the United States for the outstanding assessments for the unpaid payroll taxes (under Section 6672) during the Tax Periods. Defendants concede that Mr. Born is indeed responsible for the unpaid trust fund taxes, the only reservation being that "the Government has not submitted calculations which support the . . . judgment it seeks."[9] In their reply, the Government submitted the declaration of Revenue Officer Terence A. Johnson, supporting a judgment against Defendant Kenneth J. Born for unpaid federal tax liabilities in the updated amount of $508,293.86 plus accrued statutory interest and additions.[10] The Court concurs with the Government's assertion, which is supported by the IRS documents and Defendant Kenneth J. Born's own admissions. Therefore, the Government's motion for summary judgement

---

[9] Docket 14 at 1.
[10] Docket 20 at 2.

as to the first claim is granted in the amount of $508,293.86 plus accrued statutory interest and additions from November 30, 2015, less any payments or credits, as provided by law.

### C. Foreclosure of the Federal Tax Liens Against the Subject Real Property

The Government has also asserted that a forced sale by foreclosure of the federal tax liens on the Subject Real Property is proper in this matter. 26 U.S.C. §7403(c) provides that the Court,

> . . . in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and the United States.

Such a forced sale however is not mandatory under all circumstances. In *U.S. v. Rodgers* the Supreme Court has indicated four considerations for the exercise of reasoned discretion under §7403.[11] Under *Rodgers*, district courts evaluating a forced sale authorized by § 7403 ought to consider: 1) the economic prejudice to the Government from a partial sale; 2) the third party's expectation that their interest in the property would be protected from a forced sale; 3) the likely prejudice to the third party from dislocation cost and potential undercompensation; and 4) the comparative property interests of the taxpayer and the third party.[12] While not exhaustive, the Court finds these considerations instructive in exercising its own discretion under §7403.

#### 1. The Economic Prejudice to the Government from a Partial Sale

Defendants assert that the Government is not faced with "a Hobbesian choice" of selling the innocent spouse's interest or depriving the Government of the value of its lien. However, Defendants' alternative theory of resolution requires the Government to accept a settlement offer

---

[11] 461 U.S. 677, 706 (1983).
[12] *Id*. at 710-11.

made by Defendants that would entail selling the Subject Real Property to Mrs. Born for the tax appraised values. As discussed previously, the Court does not acknowledge any offer made between the parties. Whether or not any such settlement offer is made between the parties is not rightfully before this Court. Other than the excluded settlement offer, no alternative is offered to either an unlikely partial sale or a full sale of the property.

The Government argues that even if the settlement offer were considered, the money for the payments would come from the Defendants' joint business, it would require the United States to wait five years to be paid in full for the property, and would require giving up the tax liens in exchange for a first position deed of trust for the Subject Real Property.

The parties are in agreement that it is unlikely anyone will bid to purchase an undivided interest in the property to be held with DeLyse Born.[13] The Court finds that the Government would suffer economic prejudice from a partial sale. The United States appears to only have the Subject Real Property to look to for collection of Mr. Born's tax liabilities. Moreover, "the purpose of the federal tax lien statute [is] to insure prompt and certain collection of taxes due the United States from tax delinquents."[14] This consideration weighs in favor of a forced sale.

### 2. Third Party's Expectation that Interest in the Property would be Protected from a Forced Sale

The Government argues that when a wife has conspired in the transfer of the marital residence to frustrate the Government's tax-collection efforts, she no longer had a legally

---

[13] Docket 12 at 17; Docket 14 at 8.

[14] *United States v. Security Trust & Sav. Bank*, 340 U.S. 47, 51 (1950); *Rodgers,* 461 U.S. at 711.

recognized expectation that the property would not be subject to a forced sale.[15] Defendants argue that for nearly all of the relevant periods in this matter they have owned the Subject Real Property together as tenants by the entirety and that Alaska law does not permit the sale of an innocent tenancy by the entirety interest, particularly a homestead property.[16] While Defendants' transfer of the Subject Real Property solely to Mrs. Born for a time is concerning, the Court does not find that it eliminates any expectation of protection from a forced sale, particularly as Defendants did return the property to joint ownership.

Nevertheless, Mrs. Born cannot be considered a wholly innocent third party. The restructuring of Defendants' joint business seem designed to frustrate the Government's tax-collection abilities. For example, Mr. Born, as a 49% owner in the business draws no salary while Mrs. Born is paid about $1,000 weekly.[17] Additionally, several parcels of properties purchased by the business are held solely in Mrs. Born's name with no similar distributions to Mr. Born.[18] The Court agrees with the Government's contention that all or a portion of Mr. Born's liabilities might have been collected from those properties, rather than from the Subject Real Property. In considering the sum of these facts, the Court finds this factor to be fairly balanced.

### 3. The Likely Prejudice to the Third Party from Dislocation Cost and Potential Undercompensation.

The Government argues that this factor requires some sort of special circumstance of prejudice to the non-liable third party that is distinct from costs in any other foreclosure action.[19]

---

[15] *See United States v. Bierbrauer*, 936 F.2d 373 (8th Cir. 1991).
[16] *See Smith v. Kofstad,* 206 P.3d 441, 445 (Alaska 2009).
[17] Docket 19 at 3-4.
[18] *Id*.
[19] *See Bierbrauer*, 936 F.2d at 375-76.

Additionally, the Government argues that the record in this case provides no basis for concluding that the costs of relocation would be unduly burdensome to Mrs. Born, and she makes no argument that they would be. Defendants primarily assert that because of the general financial downturn and possible recession in Alaska, that a judicial foreclosure will undercompensate Mrs. Born. This, of course, is speculative.

The Court notes that Mrs. Born does have income from full-time employment and that she will be compensated for her ownership interest in the Subject Real Property from her share of the net sale proceeds. The Government has the same interest as Mrs. Born in obtaining the maximum amount possible from the sale of the property in as much as Mr. Born's interest in the property will not fully cover his tax liabilities. The Court sees no special circumstance, disadvantage, or prejudice to Mrs. Born from a forced sale other than the same inconvenience associated with any foreclosure sale. This factor therefore weighs in favor of a forced sale.

### 4. The Comparative Property Interests of the Taxpayer and the Third Party.

Defendants assert that interests of DeLyse Born and Kenneth Born in the Subject Real Property are not equal. While both Defendants are the same age, Defendants argue that annuity tables used by Social Security Administration and the Ninth Circuit Court of Appeals values Mrs. Born's interest at 53% of the Properties and that Kenneth Born's interest at 47% of the Properties.[20]

The Government maintains that tenants in the entirety have an equally divided interest in the property. However, The Government adds that even if the Court does rely on the annuity tables cited by Defendants and finds that Mrs. Born has a 53% interest in the Subject Real Property, this

---

[20] *See In re Peltz*, 221 F.3d 1114, 1116 (9th Cir. 2000).

case does not present the gross disparity in relative ownership interests about which the Supreme Court expressed concern in *Rodgers*.

Without yet addressing the proper valuation of each Defendant's interest in the Subject Real Property, the Court concurs with the Government's contention that even under Defendants' method of valuation, the disparity between Mr. and Mrs. Born's interest is nominal. The fourth factor again weighs in favor of forced sale.

Therefore, as the above discussion and evaluation of these four *Rodgers* factors suggests, the Court finds that a forced sale by foreclosure of the federal tax liens on the Subject Real Property is proper.

### D. Right of Redemption

Defendants assert that Mrs. Born needs to be protected from undercompensation with a 60 day redemption right under AS 9.38.010(c) on Lot 3 and a one year redemption right under AS 9.35.210 on both Lots 1 and 3. The Government's response is that because Mrs. Born will be compensated for her interest in the Subject Real Property, it is in both Mrs. Born as well as the United States' best interest to collect the highest possible return on the foreclosure sale. The Government adds that adopting state law redemption rights could discourage potential buyers from paying fair market value for the property, which would result in the very harm that Mrs. Born seeks to avoid.

The Court recognizes that Alaskan law does proscribes a right of redemption.[21] However, Court-ordered foreclosure sales made pursuant to 28 U.S.C. § 2001 do not have a right of

---

[21] *In re Preblich*, 5 F.3d 539 (9th Cir. 1993).

redemption.[22] Moreover, Defendants have not demonstrated an entitlement to redemption other than potential undercompensation. The Court finds the likelihood of undercompensation minimal, as the Subject Real Property is the primary means for the Government to recover Mr. Born's unpaid federal income tax liabilities and even the total tax appraised value of the Subject Real Property would not cover the full amount sought by the Government. Accordingly, Mrs. Born maintains no right of redemption in the Subject Real Property.

### E. Valuation of Spousal Interest in the Subject Real Property

As discussed previously, Defendants contend that if a forced sale occurs, Mrs. Born is entitled to 53% of Subject Real Property based on annuity tables and Defendants' respective life expectancies.[23] The Government's response is that not only is *In re Pletz* somewhat outdated based on subsequent case law, but it is specific to bankruptcy proceedings under Oregon law. The Government contends that an equal split of the foreclosure proceeds is consistent with Alaska law, which gives each spouse identical rights and logically assigns an equal value to each spouse's interest when the entireties estate is severed such as in divorce.[24]

The Court acknowledges the holding in *In re Pletz*, but finds greater weight in the Supreme Court's subsequent decision in *United States v. Craft*.[25] In *Craft*, the Court makes no indication of a single proper method of valuation or a requirement to utilize actuarial tables and life expectancies

---

[22] *United States v. Heasley*, 283 F.2d 422, 427 (8th Cir. 1960); *United States v. Scholnick*, 606 F.2d 160, 166–67 (6th Cir.1979); *United States v. Stadium Apartments, Inc.*, 425 F.2d 358, 364 (9th Cir.1970); *O'Brien v. Kelly*, 597 F. Supp. 17, 20 (D. Alaska 1984).

[23] *See In re Peltz* 221 F.3d 1114, 1116 (9th Cir. 2000).

[24] *See Green v. Green*, 29 P.3d 854, 860 (Alaska 2001); *Atlas Assur. Co. of Am. v. Mistic*, 822 P.2d 897, 901 (Alaska 1991).

[25] 535 U.S. 274 (2000).

for the valuation of spouses' interests in properties held as tenants in the entirety.[26] However, the Court does note that a non-liable spouse "had no more interest in the property than her husband."[27] As such, the Court therefore finds that, consistent with Alaska law, Mr. and Mrs. Born possess an equal interest in the Subject Real Property and the proceeds of the forced sale shall be divided accordingly.

## CONCLUSION

For the reasons outlined above, Defendant's Motion for Summary Judgment at **Docket 12** is hereby **GRANTED**. Additionally, the Government's Motion to Exclude Evidence at **Docket 18** is **GRANTED**. The Court orders that the tax liens identified in this matter be foreclosed against the Subject Real Property, that the Subject Real Property be sold pursuant to 26 U.S.C. § 7403 and 28 U.S.C. § 2001 without any right of redemption, and that the sales proceeds be equally distributed in accordance with the Court's findings as to the validity and priority of the parties in the Subject Real Property.

**IT IS SO ORDERED** this 29th day of March, 2016.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[26] *Id.* at 289.
[27] *Id.* at 285.